LOUIS BROOKS et al., Copartners, Trading as DORE-MUS & COMPANY, Appellants, *v.* PEOPLE'S BANK, Respondent.

Sales — contracts — sale of goods or stocks for future delivery even though seller has none in his possession — when such a contract valid — such contract may not be used as a mere guise for speculation upon the rise or fall of prices — deposits of money in bank to credit of brokers to purchase cotton for depositors — notification of brokers by bank cashier of such deposits — purchases made by brokers relying upon such notice — when brokers can recover such money from bank — purchase of cotton futures lawful in this state.

1. A man may lawfully sell goods or stocks for future delivery, even though he has none in his possession, if he really intends and agrees to deliver them at the appointed time. Such a transaction constitutes a valid contract, which is enforcible in the courts. But

# 88 BROOKS v. PEOPLE'S BANK.

a man may not, under the guise of such a contract, enter into a naked speculation upon the rise or fall of prices, in which there is to be no delivery of property, and no payment except such as may be necessary to provide for differences arising purely from market fluctuations. Such a transaction is a mere wager, which is condemned alike by statute and public policy.

2. The plaintiffs claim to be entitled to certain moneys which defendant through its cashier had notified them it had received and had on deposit; that they acted upon certain telegrams and letters to that effect and directions contained therein to purchase cotton for customers who were alleged to have deposited the funds. The defendant says the telegrams were false; that it never received any money for the plaintiffs; that the cashier was speculating on his own account and falsified orders. The plaintiffs failing to receive the balance of this account upon demand and having executed, as claimed by them, the orders to purchase cotton, brought this action as for money had and received, jurisdiction being obtained in this state by attachment. The defendant bank pleaded that no money of the plaintiffs had been received by it and that the plaintiffs' dealing in cotton futures was illegal by the laws of Georgia. On the trial the plaintiffs had a verdict for the full amount claimed. The judgment entered thereon was reversed by the Appellate Division which also dismissed the complaint, and reversed the finding of fact that the defendant had received deposits of any money belonging to the plaintiffs. *Held*, that the letter and the telegrams sent by the bank or its cashier made out a *prima facie* case of money had and received for the plaintiffs, and that coupled with the testimony of plaintiffs the case cannot be disposed of as a matter of law upon the testimony of the cashier; that there was presented a question of fact upon the evidence which required the submission of the case to the jury and it was error for the Appellate Division to dismiss the complaint. *Held, further*, that whatever may be law of Georgia, the penalties annexed to the enforcement of the purchase of cotton futures do not apply here, and as long as our law has not been violated in the purchase and sale of cotton by the plaintiffs, in that it was a mere gambling contract, this action can be maintained in our courts.

*Brooks* v. *People's Bank*, 192 App. Div. 541, modified.

(Argued February 2, 1922; decided February 28, 1922.)

APPEAL from a judgment entered July 20, 1920, upon an order of the Appellate Division of the Supreme Court in the first judicial department reversing a judgment in

favor of plaintiffs entered upon a verdict and directing a dismissal of the complaint.

*J. H. Gilbert* for appellants. Appellants not only established their case by sufficient testimony, by the letter and telegrams concededly sent by defendant's cashier, but their evidence was of such a character that it created an estoppel against respondent, since the jury found, by its verdict, that appellants relied upon said statements and acted upon them. (1 Greenl. on Ev. §§ 207, 208; *Farmers & Mechanics Bank* v. *Butchers & Drovers Bank*, 16 N. Y. 134; *Barnes* v. *Ontario Bank*, 19 N. Y. 152; *Mead* v. *Mechanics Bank*, 25 N. Y. 149; *Cooke* v. *State Nat. Bank*, 52 N. Y. 155; *Mechanics Bank* v. *State Bank*, 10 Wall. 673; *Griswold* v. *Haven*, 25 N. Y. 595; *Armour* v. *M. C. R. R. Co.*, 65 N. Y. 111; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195; *Irving Bank* v. *Wetherbold*, 36 N. Y. 335.) It was not requisite for the appellant to allege in the complaint the facts constituting the estoppel or to plead a cause of action upon the theory of estoppel, but the cause of action was properly for money had and received, and appellants were entitled, in this form of action, to recover upon the theory of estoppel. (*Provot* v. *Lawrence*, 51 N. Y. 219; *Krekeler* v. *Ritter*, 62 N. Y. 372; *Meeder* v. *Provident Savings Soc.*, 58 App. Div. 80; 171 N. Y. 432; *Feinberg* v. *Allen*, 143 App. Div. 866; *Shelton* v. *Southern R. R. Co.*, 255 Fed. Rep. 182.) Assuming, *arguendo*, that the proof conclusively established that the moneys mentioned in the letter and telegrams were not deposited, and considering this case upon the theory that the representations in the said letter and telegrams were false, the plaintiffs were not limited to an action against defendant for damages for misrepresentation, which would have been an action in avoidance of the contract, but had an absolute right to maintain this action for money had and received, which is an action upon the contract created by

the misrepresentations, and the election was with the plaintiffs. (*Farmers & Mechanics Bank* v. *Butchers & Drovers Bank,* 60 N. Y. 125; *Barnes* v. *Ontario Bank,* 19 N. Y. 152.)

*Charles L. Kingsley* for respondent. The reversal by the Appellate Division of the finding of the jury that there was deposited with the defendant to the credit of or for the use of the plaintiffs any sum or sums of money which the defendant on demand refused to pay was correct and proper. (*Nat. Trust Co.* v. *Gleason,* 77 N. Y. 400.) The plaintiffs having invited and inveigled the cashier of the defendant to speculate and to induce his friends to speculate in cotton, they thereby made the cashier their agent and were put upon notice to inquire if his acts were the acts of the defendant bank. (*Moores* v. *Citizens Nat. Bank,* 15 Fed. Rep. 141; *Manhattan Life Ins. Co.* v. *F. S. St., etc., R. R. Co.,* 139 N. Y. 146.) The transactions carried on by the plaintiffs and the cashier of the defendant were illegal and void by the laws of Georgia, where made, and are illegal and void everywhere. (*Bugg* v. *Towner,* 41 Ga. 315; *Tompkins* v. *Compton,* 93 Ga. 520; *Leonard* v. *Poole,* 114 N. Y. 371; *McMullin* v. *Hoffman,* 174 U. S. 639.)

CRANE, J. Doremus & Co. were copartners having a membership in the New York Cotton Exchange as well as the New York Produce Exchange. The floor member was Louis Brooks of the firm. They maintained an office in Atlanta, Georgia, which was in charge of the partner, Henry K. Stanford. The defendant was a bank authorized and existing under the laws of the state of Georgia doing business at Mansfield in that state. The plaintiffs had done business with it prior to the times involved in this litigation.

On these occasions the bank had notified the plaintiffs by telephone or by wire that deposits had been placed

1922.]                    Opinion, per CRANE, J.          [233 N. Y. 87]

to their credit, and the plaintiffs would sometimes draw on the bank for those deposits and sometimes would request the bank to remit to them the exchange on the city of Atlanta or the city of New York. No difficulty appears to have arisen from this method of doing business.

In October of 1915, H. K. Stanford wrote a letter to Mr. Hugh Franklin, the cashier of the defendant, the substance of which was to give his opinion of the market regarding cotton and cotton seed oil. It was in the nature of a market letter and ended with the following paragraph: " You can do me lots of good there, Hugh, among your friends, and I will greatly appreciate anything you do for me. I want business from good people, not welchers, you know who is good, and it will do me good to get business now more than ever because I am now the largest stockholder in the firm of Doremus & Co. * * * Whenever I can serve you call on me."

When upon the stand Mr. Stanford testified that in this month when Mr. Franklin was in his office in Atlanta he said to him: " ' Mr. Franklin, I would like for you to speak a good word for me, now that I have become a member, formerly working on a salary for Mr. Brooks and Mr. Doremus, as I am now a member of this firm, I am very anxious to double my energies to secure business but I want it only from good people,' and I wrote him to that effect afterwards and I said to him, ' Now it would do me good and it will strengthen us financially if the people in your community know that we carry a balance in your bank; I will be glad to leave any margins deposited to our credit, there in your bank, and when any of your clients in your community closes out any open contract for a profit they have with us, I will wire your bank to pay them the money on the spot without having to wait to send a check.' "

The situation presented by the testimony of Mr. Stanford was this: After previous dealings with the defendant, Mr. Stanford asked the cashier of the bank

to speak a good word for the firm, get customers and take the deposits which they might make on orders given to the plaintiff. These deposits, Stanford said, need not be drawn out at once, but could remain with the bank until some future period.

This relationship being established, the plaintiffs thereafter received a letter and telegrams from the bank or from Franklin, the cashier of the bank, relating to deposits made in the bank by supposed customers of the plaintiffs.

The letter was as follows:

" L. O. BENTON,      R. S. FRANKLIN,    L. H. FRANKLIN,
  President,                Vice-president,         Cashier.
                    " PEOPLE'S BANK.
                    " Capital $25,000.
                    " Mansfield, Ga.
                                        " *October* 15, 1915.

" DOREMUS & Co.,
      " Atlanta, Ga.:
" Mr. H. K. STANFORD:

" DEAR HENRY.— Doremus & Company have the following credits at this bank:

    " $300 deposited by H. M. Lloyd
      200 deposited by H. M. Lloyd
      200 deposited by W. P. Hardman
      300 deposited by J. W. Morgan
" Will be in the city Monday, will see you no news.
            " Yours very truly,
                        " L. H. FRANKLIN,
                                " *Cashier.*"


The telegrams were to the effect that certain persons, giving their names, had deposited specified sums of money with the defendant to the credit of the plaintiffs or else directed the plaintiffs to buy a certain amount of cotton stating that the funds were deposited by the alleged customer. Again the telegrams stated that certain

supposed customers had deposited certain sums of money, but did not state in whose name the deposits were made or for what purpose.

In view, however, of the letter and other telegrams it is fair to assume and the presumption may naturally arise that all these moneys were alleged to have been deposited with the bank by the plaintiffs' customers to the credit of the plaintiffs for the purpose of cotton transactions.

A summary of these communications amounts to this:

It was stated that $3,650 was deposited to the credit of the plaintiffs; $1,800 was deposited by customers whose names were given on orders to the plaintiffs to buy cotton for delivery in the future, and $4,300 was credited to customers presumably for the purpose of buying cotton through the plaintiffs. Upon receipt of these letters and telegrams the plaintiffs drew upon the defendant bank two drafts amounting to $4,200 which were paid.

Thereafter the plaintiffs failing to receive the balance of this account upon demand and having executed, as claimed by them, the orders to purchase cotton brought this action as for money had and received, jurisdiction being obtained in the state of New York by attachment.

The defendant bank pleaded that no money of the plaintiffs had been received by it and that the plaintiffs' dealing in cotton futures was illegal by the laws of Georgia.

On the trial the plaintiffs received a verdict from the jury for the full amount claimed. The judgment entered thereon was unanimously reversed by the Appellate Division which also dismissed the complaint. The Appellate Division reversed the finding of fact that the defendant had received deposits of any money belonging to the plaintiffs.

In my judgment there was presented a question of fact upon the evidence which required the submission of this case to the jury and it was error for the Appellate

Division to dismiss the complaint. As stated above we have here in the plaintiffs' evidence a course of dealing between the plaintiffs and the People's Bank. In October of 1915 one of the plaintiffs knowing the cashier of the bank asked him to drum up customers and take deposits on contracts or orders from them. Thereafter communications were sent by the bank from the cashier to the plaintiffs notifying them that certain moneys had been deposited to their credit, or had been deposited to carry out orders telegraphed to the plaintiffs to buy cotton.

Brooks, a member of the Exchange in New York city, testified that all of the orders sent by the defendant's telegrams were executed and carried out and the cotton purchased as directed. His testimony may be the subject of criticism and it may also be disregarded by the triers of fact, but it was for the jury to say whether or not he was stating the truth.

To meet this evidence given by the plaintiffs the cashier of the bank was called, L. Hugh Franklin, who stated that there was no money whatever deposited with the bank, that all the telegrams were false, that he was speculating on his own account to the knowledge of Stanford and that Stanford had advised him to speculate and to send the false telegrams.

Why a member of the plaintiffs' firm and one of the plaintiffs should want false telegrams sent stating that money was deposited in the bank when there was in fact no money to cover the margins on the orders, is explained by this witness in his statement that Stanford said that Doremus & Co. were rich, did not need any money and the telegrams would satisfy his partners if inquiries were made into the transactions.

The testimony of this witness interested in the outcome and for whose actions the bank would have some personal claim against him should have been submitted to the jury.

The plaintiffs claimed to be entitled to certain moneys

which the bank through its agent had notified them it had received and had on deposit. They claim to have acted upon the telegrams and bought cotton in some instances. The bank says the telegrams were false; that it never received any money for the plaintiffs, that the cashier was speculating on his own account and falsified orders. The books of the bank were not received in evidence. We think that the letter and the telegrams sent by the bank or its cashier made out a *prima facie* case of money had and received for the plaintiffs, and that coupled with the testimony of Stanford and that of Brooks, the case cannot be disposed of as a matter of law upon the testimony of the cashier.

If the bank received no money for the plaintiffs or belonging to the plaintiffs this action cannot be maintained for money had and received. (*Chapman* v. *Forbes*, 123 N. Y. 532, 536; *Roberts* v. *Ely*, 113 N. Y. 128, 131.)

The plaintiffs claimed the right to recover upon the theory of estoppel. It may be that a cashier of a bank acting within the scope of his authority may bind his institution by letters or telegrams in the same way as he can by more formal instruments. All the elements of an estoppel may arise out of representations as to credit by telegram as well as by any other means (1 Greenleaf on Evidence [16th ed.], §§ 207, 208; *Farmers & Mechanics' Bank of Kent County* v. *Butchers & Drovers' Bank*, 16 N. Y. 125; *Armour* v. *Michigan Central R. R. Co.*, 65 N. Y. 111), but I agree with the Appellate Division that in this case the plaintiffs can recover only upon testimony proving that the defendant actually had received deposits for them or belonging to them. This recognizes that the bank may be liable in a proper action for any damage that the plaintiffs may have suffered by reason of acting upon the representations of the defendant's cashier, if made within the scope of his authority. But the element of damage from the record in this case does not satisfactorily show that it is measured by the amounts of the alleged deposits. For

instance, the plaintiffs acting upon the telegrams may have bought cotton, which subsequently they sold at a profit. Here would be no damage. What became of the cotton purchased by Brooks on the defendant's telegrams does not appear. In the case of money had and received this would be immaterial, as the money in the hands of the defendant would be the plaintiffs' money and the defendant could not refuse to pay it because the plaintiffs failed to carry out the contract with the person who deposited it. But when it comes to proving the receipt of such money by the defendant on the theory of estoppel, then the actual damage should be shown and the action must be for false representation or for like remedy, not for money had and received. (*N. Y. Guaranty & Indemnity Co.* v. *Gleason,* 78 N. Y. 503.)

Of course there can be no recovery in any form of action if the plaintiffs or one of the partners knew that Franklin was speculating through these accounts or that no moneys were in fact deposited.

We do not mean to say that the telegrams stating that money was deposited by a customer in his own name would entitle the plaintiffs to recover without further proof. Such moneys would be the moneys of the customer, not of the plaintiffs. If, however, such telegrams meant that the money was deposited by the customer for the plaintiffs, and the plaintiffs, on the defendant's order, bought cotton for such a customer, a different question would be presented. On a new trial it may appear how the cotton purchased by the plaintiffs for its customers was disposed of.

Whatever may be the law in Georgia, the penalties annexed to the enforcement of the purchase of cotton futures do not apply here, and as long as our law has not been violated in the purchase and sale of cotton by the plaintiffs, in that it were a mere gambling contract, we see no reason why this action cannot be maintained in our courts. The law of this state is given in *Weld*

v. *Postal Telegraph-Cable Co.* (199 N. Y. 88) as follows: " A man may lawfully sell goods or stocks for future delivery, even though he has none in his possession, if he really intends and agrees to deliver them at the appointed time. Such a transaction constitutes a valid contract, which is enforceable in the courts. But a man may not, under the guise of such a contract, enter into a naked speculation upon the rise or fall of prices, in which there is to be no delivery of property, and no payment except such as may be necessary to provide for differences arising purely from market fluctuations. Such a transaction is a mere wager, which is condemned alike by statute and public policy."

For the reasons stated we think this judgment must be modified so as to grant a new trial and as so modified affirmed, with costs to abide the event.

Hiscock, Ch. J., Hogan, Cardozo, Pound, McLaughlin and Andrews, JJ., concur.

Judgment accordingly.