In the Matter of the Accounting of FIDELITY UNION TRUST COMPANY et al., as Trustees under the Will of FRANKLIN A. CHAPMAN, Deceased.

Surrogate's Court, New York County, November 23, 1951.

374

*Hervey, Barber & McKee* for trustees, petitioners.

*Jack N. Blinkoff,* special guardian for Patricia C. Kennedy and others, infants, respondents.

FRANKENTHALER, S. One of the objections interposed to the account of the trustees is to the credit taken for a loss that resulted upon the sale of the trust estate's half interest in realty located on Broad Street, Newark, New Jersey. The property was acquired by the testator through a mortgage foreclosure shortly before his death. In the foreclosure proceeding title was taken in the name of testator's nominee who conveyed to the accounting trustees in November, 1934. The remaining half interest in the property is held by the trustees under the will of Mary C. March, deceased. The trustees under that will are the same persons who are here accounting as trustees under the testator's will. When the trustees acquired the property the improvements on it were old and in poor condition and the property's value was chiefly in the land. The

rents were insufficient to meet carrying charges through the year 1938 and at that time the trustees under the will of Mary C. March applied to the New Jersey Chancery Court for instructions. While the New Jersey proceeding involving the March estate was pending undetermined the trustees herein applied to this court for instructions and for authority to default in the payment of taxes and to permit the property to be sold at a tax sale. The Surrogate denied the application and refused to assume the problems of the trustees or to exercise their discretion (*Matter of Chapman,* N. Y. L. J., Aug. 25, 1939, p. 458, col. 1). The trustees of the March estate ultimately procured a decree of the New Jersey Chancery Court instructing them to conserve the income from the property by permitting municipal taxes to accumulate. That decree granted those trustees leave to apply to the court for further directions if at a later date the nonpayment of taxes threatened a loss of the corpus. The trustees of the two estates thereafter did not pay taxes for the year 1939 or later years. The property eventually was sold in 1944 for a net figure of $1,800, one half of which was paid to the accounting trustees. The sum so realized was considerably less than the valuation fixed for the trust's half interest in the prior accounting in this estate. The objectant contends that the decrease in value and resultant loss upon the sale is attributable to the acts of the trustees in failing to apply income to the payment of taxes.

The established rule governing testamentary trusts is that realty taxes are payable from trust income in the absence of a contrary intent expressed in the will (*Matter of Albertson,* 113 N. Y. 434; *Matter of Jackson,* 258 N. Y. 281; *Martin* v. *Kimball,* 86 N. J. Eq. 10; *Outcalt* v. *Appleby,* 36 N. J. Eq. 73; *Green* v. *Green,* 134 N. J. Eq. 479). Here the trustees speak of payment of taxes as throwing good money after bad. They justify their failure to pay taxes upon the ground that so long as the other half owner made no contribution to the taxes it would have been foolhardy for the accounting trustees to pay the portion of the taxes allocable to this trust. The fact remains, nevertheless, that so long as income was available for the purpose it was applicable to the taxes and that, if there was justification for withholding tax payments, the amounts withheld did not accrue to the benefit of income. The realty was not worthless but had a value that was realized upon the sale. The tax arrears affected the sales price and in so doing diminished the corpus of the trust.

Although the courts of this State have not fully accepted the rule of section 240 of the Restatement of the Law of Trusts, regarding the administration of unproductive property, it has been held that a power of sale that, under the particular circumstances, effects an equitable conversion of unproductive property imports an intention that permits deviation from the usual rule fixing the burden of normal carrying charges (*Lawrence v. Littlefield,* 215 N. Y. 561; *Furniss v. Cruikshank,* 230 N. Y. 495; *Matter of Jackson, supra; Matter of Satterwhite,* 262 N. Y. 339; *Matter of Rowland,* 273 N. Y. 100). The facts here present are that the property was unproductive at the date of the testator's death and never became productive thereafter, the property was acquired only shortly before the testator's death by foreclosure and not by purchase, the primary trust beneficiary was deceased's widow, the secondary beneficiary was a niece who was a particular object of bounty under various provisions of the will and the will contains a power of sale. In *Matter of Rowland* (*supra,* p. 106) the rule was stated as follows: '' When the character of the trust property, the circumstances surrounding the execution of the will and the relationship of the testator to the beneficiary are such that intent to that effect on the part of the testator may be presumed, a discretionary power of sale will be deemed in certain circumstances a mandatory power for the purpose of effecting an equitable conversion.'' Under the law of this State the facts are sufficient to bring the situation within the doctrine of equitable conversion and to require an apportionment of the proceeds of the sale between principal and income.

The law of the situs of the property determines whether or not the will effects an equitable conversion of the realty. (Decedent Estate Law, § 47; *Clarke v. Clarke,* 178 U. S. 186; *Matter of Good,* 96 N. Y. S. 2d 798, affd. 278 App. Div. 806; *Fidelity Union Trust Co. v. Ackerman,* 123 N. J. Eq. 556; 1 Davids on New York Law of Wills, § 502.) Since the proceeds of the sale of the realty are here in the State of domicile, this court has jurisdiction to determine the issues raised by the objections to the account even though reference to foreign law may be necessary (*Butler v. Green,* 65 Hun 99, 108).

It appears to be the usual rule in New Jersey that while non-income producing realty remains unconverted ordinary taxes and maintenance expenses are to be charged to estate income in the absence of a contrary intent in the will (*Outcalt v. Appleby, supra; Green v. Green, supra*). In connection with unproductive

property acquired by foreclosure the courts of that State have applied a rule of equitably apportioning any loss resulting upon the ultimate sale of the property, the reasoning being that, following foreclosure of a mortgage, the holding of a property for anticipated but unattained appreciation is a joint venture between the life tenant and the remainderman (*Hudson Co. Nat. Bank* v. *Woodruff*, 122 N. J. Eq. 444, mod. 123 N. J. Eq. 585; *Fidelity Union Trust Co.* v. *Doyle*, 135 N. J. Eq. 514). Of course in this State salvage operations in connection with mortgage foreclosures are controlled by section 17-c of the Personal Property Law or the rule of *Matter of Chapal* (269 N. Y. 464) and *Matter of Otis* (276 N. Y. 101). The New Jersey Chancery Court has said that in such situations the court attempts to do equity between the parties rather than to lay down an arbitrary rule of apportionment and the applications of the formula found in the New Jersey reports and the one given in section 241 of the Restatement of the Law of Trusts will produce an identical apportionment providing the same interest rate is employed in each calculation (*Fidelity Union Trust Co.* v. *Doyle, supra*).

In the instant case the trustees did not conduct a salvage operation of property acquired through their own foreclosure of a mortgage. The trustees never owned the mortgage but obtained the realty shortly after deceased's acquisition of title through foreclosure. In some sense the trustees were executing the final stage of a salvage operation but they were not confronted with the multiple problems incidental to the usual salvage operation since their task was limited to an administration of the realty until the time when it could be disposed of advantageously. The circumstances of their acquisition of the property were unique and whether the theory of equitable conversion be employed or it be said that while they held title to the realty it was a joint venture between the life tenant and the remaindermen, the equities of the situation now require an apportionment of the sale proceeds between income and principal interests in the trust. Utilization of the formula contained in section 241 of the Restatement of the Law of Trusts will attain an equitable result and the accounting trustees are directed to make an apportionment in accordance with that formula. Such computation will include the necessary adjustment of the unpaid taxes and other carrying charges.

The prior account of the trustees contained information as to the operation of this property and as to the disposition of

rents received. The trustees suggest that the decree in the prior accounting proceeding is *res judicata* upon the issues raised by the objectant. That account also revalued the property at a figure lower than inventory. No party then made objection to the account and consequently all parties acquiesced in the dispositions of rents and income as reported by the trustees and the decree settling their account discharged the trustees as to the matters embraced in the account (Surrogate's Ct. Act, § 274). However, that decree is not *res judicata* as to a subsequent accounting period upon issues neither raised nor considered in the prior proceeding (*Matter of Hubbell*, 302 N. Y. 246, 253). Although the objectant is precluded by the intermediate decree from raising questions as to payments made to the income beneficiary prior to the date of that decree or pursuant to a direction therein, the decree is not *res judicata* as to the operation of the Broad Street property and the disposition of income or principal derived from that property during the period of administration covered by the present account.

A part interest in property located on Mulberry Street, Newark, New Jersey, was received by the trustees from the executors of the estate who had foreclosed a mortgage on the property. From the time of such acquisition the income from the property always was inadequate to meet the operating expenses and tax arrears had accumulated prior to the foreclosure. The present account carries forward a balance of income and reports certain small gross receipts during the accounting period. The earlier account stated that the property was without value and the summary in the decree settling that account did not attribute any value to the property. Objection has been made to the failure of the trustees to pay taxes on this property. The objection is overruled. The trust's interest in this property is stated in the account to be without value and, although there is some indication that all interest of the estate was wiped out by foreclosure of a tax lien, the property is reported in the schedule of assets on hand as valueless. The objectant does not question the representation that, as was found in the earlier account, the property is valueless. It cannot be said that the nonpayment of taxes on worthless property has adversely affected the interests of the objectant. The objection raises no other issue as to this property.

The first and second objections are sustained to the extent that the trustees will be required to make an apportionment

of the proceeds of sale of the Broad Street property in accordance with this decision and the objections otherwise are overruled.

The fees of the attorneys will be fixed upon the submission by them of affidavits setting forth the extent of their services.

Proceed accordingly.