In the Matter of the Accounting of EDWIN L. HOTCHKISS, as Executor of NORMAN P. DANA, Deceased.

Surrogate's Court, New York County, June 18, 1954.

*Louis F. Huttenlocher* for executor, petitioner.

*George Minkin* for Sam J. Johnson, respondent.

*Aaron Rosen* and *Frederic P. Houston* for Arthur C. Stifel, Jr., and another, respondents.

*Kenneth Carroad* for Lincoln Clark, respondent.

COLLINS, S. In this accounting by the executor of an insolvent estate, objections have been filed by many of the claimants. Several issues were disposed of by rulings of the court after the hearing, or by stipulation of counsel made in open court. Of the objections filed by Sam J. Johnson, Nos. 1 and 6 are marked withdrawn; 3 and 4 are dismissed for failure of proof; 2, 5 and 7 are reserved for further consideration. The objection filed by Lincoln Clark to the amended account is dismissed for lack of proof. The objection filed by Victor F. Hockmeyer to the amended account is likewise dismissed. The objections filed by Victor Hockmeyer to the main account are reserved for further consideration. The objections filed by Arthur C. Stifel, Jr., and another appear to have been obviated by the amended account and no rulings thereon are necessary.

Two questions were formulated for preliminary consideration by the court in order to determine whether further evidence would be admissible in support of the objections which are still open, and, if so, to what extent. These questions are presented by (1) the objections to the proposed payment of the Stifel claims, and, (2) the objections to the failure of the executor to obtain from the ancillary executor assets in excess of the prorata share of the foreign creditors.

(1) Arthur C. Stifel, Jr., and W. Flaccus Stifel filed claims for $18,500 each, based upon loans and thereafter instituted suit against the executor in the Supreme Court. The action demanded moneys due under certain written loan agreements and, in addition, sought to impress a trust upon credit balances in accounts with cotton brokers, as well as upon an estate bank account. While appeals from orders on preliminary motions were pending, the plaintiffs and the executor executed a stipulation of settlement, whereby the balance in the brokers' accounts, amounting to $14,190 was paid to the claimants and the claim theretofore filed was amended so as to be a general claim for the full amount less the proceeds of the two accounts. The executor agreed in the stipulation " that he will not object to said general claim in said net amount of $22,810."

The objectants Johnson and Hockmeyer object to the allowance of the Stifel claims in the sum of $22,810. In addition, the Johnson objections are directed to the act of the executor in agreeing to payment of the balance in the brokerage accounts, but at the hearing the objectant advised the court that he did not "seek to attack the validity of the settlement or stipulation by this line of questioning. [He was] only concerned with the fact that the Stifels here present a general claim against the estate for monies advanced for this purpose." The court accordingly understands that the objections are now intended to relate only to the proposed payment of the general claim, and not to the act of the executor in releasing the estate claims to the brokerage accounts.

The court interprets the stipulation of settlement as intended to effect nothing more than an allowance of the general claim by the executor. When a claim has been so admitted or allowed "any party adversely affected thereby * * * may show that the claim or debt was fraudulently or negligently allowed, or paid". (Surrogate's Ct. Act, § 210.) This section "makes the allowance or payment of a claim of some value and fixes its standing as a valid claim unless proof is made from which fraud, negligence or collusion may be inferred." (*Matter of Taylor*, 251 N. Y. 257, 261.) The objectants do not appear to charge fraud or collusion. Indeed, at the hearing it seemed that the challenge was to the enforcibility of the claim rather than to any alleged negligence of the executor in allowing it. At the further hearing, the court will permit the objectants to submit such relevant and competent proof as will tend to establish negligence in allowing the claim.

(2) The testator was domiciled in New York and his will was admitted to probate here. The accounting party qualified as executor in New York and as ancillary executor in the State of Maine. The foreign assets were collected and were the subject of an accounting in the Probate Court for the County of Cumberland, Maine. The record shows that the ancillary executor distributed all of the Maine assets to two creditors resident in the State of Maine, each of whom received approximately 57% of his claim. The executor reported in the pending accounting that the foreign assets were distributed "to the only two creditors who filed claims in the ancillary proceeding in Maine". The objectants contend that the New York executor was guilty of a breach of trust by failing to obtain for the New York creditors the excess over the amount which the Maine creditors would be entitled to receive under a prorata distribution of the

entire net estate, wherever situated. The executor maintains that he was under no duty to take any steps whatever in respect of the Maine accounting.

It is true that fiduciaries who derive their authority from different jurisdictions are, in law, separate and distinct persons, even though the same individual occupies both offices. As between executors and administrators, a distinction may exist as to the extent to which the foreign and domestic representative of the same estate stand in privity with each other. (*Helme* v. *Buckelew,* 229 N. Y. 363, 367.) Nevertheless, in respect of their duty to account, the rule is the same for executor and administrator. Subject to exceptions not here pertinent, both are exclusively bound to account in each jurisdiction only for the assets which he received, or should have received, by virtue of the authority conferred by that jurisdiction. (*Sherman* v. *Page,* 85 N. Y. 123; *Parsons* v. *Lyman,* 20 N. Y. 103, 117; *Vaughan* v. *Northup,* 40 U. S. 1, 5; Restatement, Conflict of Laws, § 520; 3 Beale on Conflict of Laws, § 520.1.)

The executor was required to seek the aid of the courts of the State of Maine to collect assets located there. He was bound to administer them in accordance with the laws of that State, to account for them to the appropriate court in that State, and to dispose of them in the manner directed by that court. He cannot be compelled to account in New York for assets received by him as ancillary executor in the State of Maine and distributed as directed by the Probate Court. He can, however, be held accountable in New York for all acts, transactions and omissions as executor in this jurisdiction.

An executor has the duty to collect all of the assets that can be reduced to his possession. The law of the State of Maine is similar to our law, in that foreign and domestic creditors are entitled to participate pro rata in the distribution of an insolvent estate. (Surrogate's Ct. Act, § 165; 1944 Rev. Stat. of Maine, ch. 143, § 33.) The Maine statute, as introduced in evidence, explicitly states that the assets there shall '' be so distributed that all his creditors here and elsewhere may share in proportion to their debts.'' It would appear that under Maine law, the New York creditors would participate in the distribution of the entire net estate on the same basis as the Maine creditors, unless there are circumstances not yet developed by the evidence which would require a different rule in this case. The Maine court presumably would have protected the rights of all creditors had it been advised of their status.

We need not now determine how far a domiciliary executor must go to enforce the rights of domiciliary creditors in proceedings in the ancillary jurisdiction, or to what extent the burden may rest on the creditors themselves. However, where one and the same person is executor and ancillary executor, he may not, in his status as executor, permit the ancillary administration to proceed with complete disregard of the claims filed at the domicile. At the very least, the New York executor owed the local creditors the duty to advise the foreign tribunal through the ancillary executor of the status of the claims filed here. Whatever may be the duty of the ancillary executor in this respect under foreign law, there is certainly a duty on the part of the domiciliary executor to endeavor to collect the moneys which should be transmitted to him. If the foreign decree should direct transmission of the assets not needed in the ancillary jurisdiction, the domiciliary executor would be held liable for failure to collect the assets from himself as ancillary executor. (3 Beale on Conflict of Laws, § 524.1; 132 A. L. R. 1369, 1375.) If no assets were transmitted here only because the foreign court was not advised that there were claims filed with the executor here, the executor has failed in his duty. His omission constitutes a breach of his duties as domiciliary executor.

The objectants are, therefore, entitled to submit proof at the hearing which would tend to show that the New York executor failed in his duty to advise the ancillary executor of the amount of the valid claims filed here. The objectants must also show actual damage to the New York creditors as a result of such omission, and the amount of such damage, if any.

In order to enable the parties to complete the proof in support of the objections upon which decision has been reserved, the matter is placed upon my calendar for hearing on the 7th day of July, 1954, at 11:00 A.M.

Proceed accordingly.