In the Matter of the Accounting of EDWIN L. HOTCHKISS, as Executor of NORMAN P. DANA, Deceased.

Surrogate's Court, New York County, October 4, 1954.

*John S. Sickels* and *Louis F. Huttenlocher* for executor, petitioner.

*George Minkin* for Sam J. Johnson, respondent.

*Aaron Rosen* and *Frederic P. Houston* for Arthur C. Stifel, Jr., and another, respondents.

*Kenneth Carroad* for Lincoln Clark and another, respondents.

COLLINS, S. The prior decision of the court disposed of all objections to the account except those relating to (1) failure of the executor to collect property from the ancillary executor, and (2) the Stifel claims. A further hearing was directed on these two general issues.

The executor and the objectant Johnson have agreed to settle and compromise the issues relating to the alleged failure to collect property from the ancillary executor. No other party objects to such settlement. The stipulation is approved and Johnson objection No. 7 is withdrawn on the terms set forth in the stipulation.

At the second hearing further evidence was submitted on the so-called Stifel claims.

Arthur C. Stifel, Jr., and W. Flaccus Stifel had entered into separate agreements with the decedent for the loan of money to him. In terms the agreements are substantially alike. As part of the consideration for making such agreements, the decedent delivered to Arthur C. Stifel, Jr., certain mathematical procedures relating to the cotton market theretofore worked out by the decedent. These formulae were disclosed to Stifel for use in any cotton market operations in which he might be engaged either individually or for his company. In return, each of the Stifels loaned the decedent the sum of $20,000 on terms and conditions set forth in detail in the contracts.

The contracts recited that the loans were made " to enable the Borrower to engage in speculative trading in cotton futures contracts." The decedent had the right to loan portions of the funds to others for the purpose of engaging in speculative trading in cotton futures, but only on the same terms as set forth in the loan agreements. The manner in which the trading should be carried on was explicitly stated. All profits were to enure to the sole benefit of the decedent. The lenders were not to participate in any of the profits. The loan agreements contemplated the deposit of the money by the decedent in one or more accounts with one or more brokers, and trading through such brokers in accordance with the rules of the New York Cotton Exchange. For repayment of the loans at maturity, the lenders were to look solely to the accounts with the brokers, and were to have no recourse in any event against the borrower per-

sonally. They were to receive interest on the sum loaned at the rate of 5% per annum, payable on January 1st and July 1st each year.

After the decedent's death, each of the Stifels filed a claim in the total sum of $18,500, less the sum of $7,095, which represented one half the balance in two brokerage accounts. Apparently there were no other broker accounts. Thereafter the claimants instituted an action in the Supreme Court against the executor, the brokers and others to impress a trust upon the credit balances in the brokers' accounts and also upon the balance in a bank account which was then in the name of the executor. The Supreme Court granted a temporary injunction restraining the bank from paying out any funds.

The executor made certain preliminary motions in the Supreme Court, which were denied. He appealed from the orders denying his motions as well as from the injunction order. While the appeals were pending, the Supreme Court action was settled by written stipulation of the attorneys whereby the balance of $14,190 in the brokers' accounts was paid to the plaintiffs, the restraint on the bank account was vacated, and the claims filed by the Stifels were amended so as to represent general claims in the sum of $11,405 each. The amended claims were in the full amount of the original claim less the sums in the brokerage accounts. The executor stipulated that he " will not object to said general claim in said net amount of $22,810."

The estate of the decedent appears to be insolvent, and objectant Johnson and others, being general creditors, are opposing the allowance of any part of the Stifel claims.

There appears to be some confusion among counsel with respect to the precise nature of the objections to the transactions involving these claims. The written objections challenged not only the amended general claim, but also the act of the executor in agreeing to the transfer of the balance in the two brokers' accounts. However, the court interpreted statements made at the hearing as limiting the objections to the amended general claim and not to any transactions relating to the broker accounts. In the prior decision herein (206 Misc. 408) the court expressed its understanding of the concession made upon the record, and at the subsequent hearing no effort was made to correct or clarify the situation, if correction or clarification were indeed necessary. The court also set forth in the prior decision its interpretation of the terms of the stipulation of settlement, and at the later hearing no other construction of

the instrument was asserted. In that decision the court adverted to the relevant authorities and principles of law governing objections to the act of an executor in allowing the claim of a creditor, and on the basis of the issues as therein outlined, the court said that it would permit the objectants to submit proof with respect to alleged negligence in allowing the general claim.

The evidence adduced at the second hearing gave no indication of a broader field of litigation than that outlined in the court's decision. However, in their argument objectants again attack the entire transaction, including that part of the compromise which provided for the surrender of the funds in the brokers' accounts. While the latter question could not fairly have been understood by other counsel to be properly in issue, the court will dispose of the objections in their broadest form.

An executor has full and complete authority to compromise a claim against an estate without seeking prior approval of the Surrogate under section 213 of the Surrogate's Court Act. (*Matter of Leopold,* 259 N. Y. 274; *Scully* v. *McGrath,* 201 N. Y. 61; *Matter of Corbin,* 227 App. Div. 87; *Matter of Barber,* 205 Misc. 596, affd. 283 App. Div. 785.) The executor, it has been said, would be held liable if the settlement were an "imprudent" one. (*Matter of Leopold, supra,* p. 276; *Scully* v. *McGrath, supra,* p. 64.) Insofar as the compromise itself is conmade by the executor can be set aside only upon proof of bad faith or fraud. (*Scully* v. *McGrath, supra.*) No attempt was made to establish bad faith or fraud in making the compromise.

There is no evidence of negligence or imprudence in making the settlement. The claimant brought suit against the executor, seeking to impress a trust upon estate funds as well as upon the brokers' accounts. The executor opposed the motion for a temporary injunction and he unsuccessfully sought to transfer the litigation to this court. He appealed from the orders made at Special Term. At this point in the litigation, the attorneys agreed upon a compromise in which each party to the dispute gave up part of his claim. There is not the slightest doubt that the decedent actually borrowed the money or that the funds in the brokers' accounts were payable to the plaintiffs under the terms of the contracts. The basis of the objections is that plaintiffs could not recover because the money was loaned to enable the decedent to engage in wagering transactions (Penal Law, § 993). The executor and his attorneys were obviously doubtful of their ability to establish such a defense. The difficulties that would have faced the executor and the probable damage that

might have resulted to other creditors by uncompromising stubbornness, is revealed by objectants' efforts here to prove illegality.

An agreement is not an illegal wagering agreement merely because it provides for the purchase and sale of commodities for future delivery. It becomes illegal only if the parties intend at the time of making the contract that no delivery of the commodity shall be made but that settlement between them is to be effected on the basis of fluctuations in market price. (Restatement, Contracts, §§ 522, 523; 6 Williston on Contracts, § 1673; *Bibb* v. *Allen,* 149 U. S. 481, 492, 493; *Embrey* v. *Jemison,* 131 U. S. 336; *Weld* v. *Postal Telegraph-Cable Co.,* 199 N. Y. 88, 103; *Hurd* v. *Taylor,* 181 N. Y. 231; *Brooks* v. *People's Bank,* 233 N. Y. 87.) The mere fact that in any transaction no delivery was actually made is not the decisive test. Where there is no understanding or intention at the beginning of the transaction that no deliveries are to be made, " purchases of cotton future contracts do not become unlawful by being closed out by a sale by the broker by direction of the customer before the time for the delivery of the cotton under the contracts and by a settlement being then made between them on the basis of the differences between the purchase and selling prices." (*Scandinavian Import-Export Co.* v. *Bachman,* 195 App. Div. 297, 303.) Nor are hedging transactions by those dealing in such a commodity necessarily unlawful. (*Browne* v. *Thorn,* 260 U. S. 137, 140; HOLMES, J.)

It is also well settled that money loaned to another for use in gambling operations cannot be recovered. (6 Williston on Contracts, § 1681; Restatement, Contracts, § 525.) The fact that the borrower wagered the moneys borrowed does not in and of itself defeat recovery. The loan must have been made for the illegal purpose in order to spread the infection of illegality to the loan agreement.

There is no evidence that as between the decedent and his brokers there was any agreement, understanding or intent that deliveries of cotton were not to be made or that settlements were to be effected only on the basis of price fluctuations. Indeed, there is not the slightest evidence as to decedent's real purpose or that of the third parties. No effort is made by any party here to treat the transaction between the decedent and the brokers as an illegal transaction.

The transaction between the claimants and the decedent is a step further removed from the purchase and sale of cotton futures, because claimants merely loaned funds to decedent.

Nothing in the terms of the contract required illegal, rather than legal, actions on the part of the decedent. Nothing in the background facts or surrounding circumstances stamps the operations of the decedent as necessarily illegal. The claimants were officers of a corporation engaged in the business of dyeing and printing cotton goods. One of them traded in cotton futures for a subsidiary company which operated cotton mills. The decedent acted as adviser to the textile corporation. The loan agreements could have been fully effectuated by transactions and operations wholly within the limits of the law. Objectants have failed to establish that the contracts were illegal.

In settling the Supreme Court action, the executor was not guilty of imprudence or bad judgment. On the contrary, the compromise appears to have been properly made.

With respect to the agreement to approve the amended general claim, no evidence of negligence on the part of the executor has been shown. Indeed, none of the parties has attempted to probe deeply into the claim for moneys beyond those in the accounts. It appears that claimants' theory was that the decedent breached the agreement in failing to deposit the funds with brokers and in using the moneys for purposes not authorized. Objectants do not assert that the decedent did deposit all moneys as required by the agreement. On the contrary, their argument assumes that he did not, for they contend that claimants were put on notice by the brokers' periodic statements that the decedent must have used part of the funds for other purposes and that they must be deemed to have agreed to a modification of the agreement to that extent. They argue that claimants' theory of a fiduciary relationship in respect of funds not deposited is not justified. The claimants, however, relinquished their claim that all funds represented trust property and they assert merely a general claim to the funds not deposited with brokers. Their general claim must rest on the theory that with respect to moneys not deposited with brokers or moneys withdrawn from brokers' accounts, the decedent has breached his contract and is liable to them for moneys so diverted. The limitation of liability would not ordinarily apply to moneys not used as provided in the agreements. Even if the lenders knew of the decedent's personal use of the funds, they cannot be deemed to have extended the limitation of liability to funds so used.

It is not asserted by any party here that the aggregate of the funds diverted was less than the allowed general claim or that any error had been made in computing the sums so used by the decedent.

The court holds that objectants have failed to establish any negligence or imprudence on the part of the executor in agreeing to allow the general claim or in surrendering the moneys held by the brokers. Nothing in the record would justify a finding that the agreements were illegal or the claims invalid.

Johnson objections 2, 4 and 5 and Hockmeyer objection 1 are overruled.

Submit decree on notice settling the account in accordance with this and the prior decision of the court.