In the Matter of the Estate of MARJORIE G. DREXEL, Deceased.

Surrogate's Court, Suffolk County, August 23, 1962.

*Emmet, Marvin & Martin* for Bank of New York, respondent. *Colton & Pinkham* for Anthony J. Drexel, 4th, and another, respondents. *H. Vincent Smart* for Gerald R. Raibourn, general guardian of Helen D. D. Raibourn. *Rensselaer G. Terry,* as special guardian for Alex Gundy. *Littlefield, Miller & Cleaves* for Charles A. Russel and another, as executors. *Thomas M. Stark,* as special guardian of Anthony J. Drexel, 5th.

PIERSON R. HILDRETH, S. This is an intermediate accounting. Objections have been filed and the parties have agreed by stipulation dated May 25, 1962, upon the disposition of certain objections and upon the remaining matters to be submitted to the court for determination. The stipulation was signed in behalf of certain infants by their guardian or counsel subject to approval of the court and the court approves the execution of the same in behalf of the infants.

Pursuant to the stipulation certain objections are disposed of as follows: As to objections filed by the Bank of New York, as

trustee; Objection 1 is allowed and the sum of $311.09 charged to principal (Schedule C, Item 73) will be charged instead to income with appropriate change in the account; Objection 3 is withdrawn; Objection 4 is allowed and the sum of $3,360.76 representing the value of certain specific bequests will be excluded from the amount on which paying commissions are payable. As to objections filed in behalf of Anthony J. Drexel, 4th, Howard Clinton Drexel and Helen Diana (Drexel) Raibourn, by her guardian: Objections III, IV, V, VI and VII are withdrawn. The request for construction of article Twelfth of decedent's will is also withdrawn without prejudice to rights of Helen Diana (Drexel) Raibourn to seek a construction of article Twelfth at any time after she becomes 21 years of age.

The court will now consider the remaining matters which the petitioners, as executors, and the other parties have submitted for determination.

1. Petitioners request approval of the allocation of what are termed Jay Gould surcharge payments received by the executors, aggregating $18,369.14 to income (Schedule I). Certain objectants contend that the sum should be allocated to principal. It is the decision of the court that the executors have properly allocated such payments to income. From the evidence submitted, the history of the litigation which resulted in the compromise of 1926, the Supreme Court judgment of 1927, the treatment of the payments by taxing authorities as to both payors and recipients, the fact that decedent was subject to income tax on the payments received by her during her lifetime, and the nature of the payments as described in the documents and judgments, it appears to the court that these payments received by the executors are to be regarded as income. Consequently, the sums will be payable to the income beneficiaries of the residuary estate.

2. Petitioner requests authorization to dispose of certain "costume jewelry" appraised at $50, identified as the last item in the appraisal of Edwin J. McDonald. The request is granted. The court is of the opinion that these particular items are not embraced in the term "jewelry" as used in article Twelfth of the will, under which items includable under that descriptive word will be held until the beneficiary reaches age 40 which will be almost 20 years in the future. It would seem that only items having substantial, intrinsic and lasting value are meant as the word is here used. Accordingly, the executors may dispose of the same in accordance with the exercise of their prudent judgment. It seems to the court that jewelry other than this costume jewelry should be delivered to and remain in the custody of the trustee

until it becomes deliverable or is otherwise disposed of in accordance with article Twelfth of the will. It would become an asset of the estate if the named beneficiary dies before reaching age 40. The expense of any such custody will be a proper charge of administration of the trust.

3. Petitioners request leave to abandon any claim or interest respecting a deposit in Barclay's Bank (France) (Schedule I, Item 5) and a deposit in Royal Bank of Canada, Nassau, Bahamas (Schedule I, Item 6). The request is granted. All parties agree that collection is impracticable.

4. As to the Hardenburgh property in Ulster County, New York (Schedule I, Item 8), the executors and/or trustee are authorized to execute and deliver a quitclaim deed to the heirs or distributees of Anthony J. Drexel, III, or such one or other thereof as may be designated by them upon payment to the trustee of the amount paid by the executors or trustees as real estate taxes on said property since the death of Marjorie G. Drexel.

5. Petitioners request authorization to abandon any claim in respect to land located on the island of Eleuthera, Bahamas, of which the record title appears to have been in decedent's name at her death (Schedule I, Item 7). It is the opinion of the court that petitioners have not shown sufficient facts to justify granting such request at this time and accordingly the request is denied without prejudice.

This land being in a foreign State it would seem that the law of the situs must govern and control descent, alienation, the effect and construction of a will with respect to such realty, as well as the effect of any conveyance and the validity of any power possessed by fiduciaries. (*Knox* v. *Jones,* 47 N. Y. 389; *Monypeny* v. *Monypeny,* 202 N. Y. 90; *Matter of Good,* 304 N. Y. 110.)

By seeking the relief they do, the petitioners apparently recognize that they have responsibilities concerning assets of the estate wherever situate, and perhaps if necessary, to take necessary steps in the foreign jurisdiction to collect the same. (See *Matter of Kramer,* 63 N. Y. S. 2d 567; *Matter of Huntington,* 35 N. Y. S. 2d 226; *Matter of Chapman,* 202 Misc. 373; *Matter of Dana,* 206 Misc. 408.)

No proceedings to probate decedent's will have been taken in the Bahamas and the executors, for various reasons, do not wish to do so nor to apply for ancillary administration in that jurisdiction. They assert the land is worthless, but it is not clear to the court that this is so. Certain parties have made an offer of $1,000 for a quitclaim deed, at the same time indicating that pos-

sibly the property might have a value of $14,000 if title could be cleared. Whether the executors or trustee would have any power or authority to give such deed, and if given, whether such deed would have any validity in the Bahamas is also not clear. The petitioners indicate a concern that if proceedings were instituted in the Bahamas litigation involving the estate might arise, but no facts are given to show the basis for that opinion. On the facts presented, it seems to the court that the executors should make an appropriate investigation concerning this property in the Bahamas as to title, value and other matters so that the parties interested might have a more adequate basis to determine whether probate of the will and/or ancillary proceedings in the Bahamas should be undertaken by the executors or others, and who might benefit from that asset under the law of the situs. It would seem that such information could be obtained without undue expense to the estate. Such information should be available to all parties interested, and what action the fiduciaries or other parties might wish thereafter to take on the basis thereof would be a matter for subsequent consideration. Actually the petitioners at this time seek to be relieved of any obligation as executors of taking steps to collect this possible asset in the foreign jurisdiction. Such an application can be considered only after a more complete, factual situation is presented.

The counterrequest of the parties offering $1,000 for a quitclaim deed to such property for authority being granted to the fiduciaries to accept such offer and to execute such deed is likewise denied without prejudice.