Edward J. Greenfield, J.
This action is brought to collect $6,070.03 on a somewhat unusual written contract of indemnity. Plaintiff contends it is a simple and straightforward contract; defendant argues it is the embodiment of an illegal and unenforcible gambling arrangement.
The dispute arises out of the ill-fated efforts of the parties, gripped by speculative fever, to cash in on the elusive “ sure thing,” and to create iron-clad guarantees to firm up the slippery grip of chance. Plaintiff was a patron of a gymnasium where defendant was employed as a masseur. In the course of their conversation which turned to stocks and investments, defendant mentioned that he was the owner of a very “ hot ” stock that was sure to score an impressive rise. So sure was he of this that he was willing to guarantee that if plaintiff purchased the stock he would suffer no losses. In exchange for disclosing the name of the stock, he wanted half of plaintiff’s net profits.
Plaintiff who was not inexperienced in the ways of business insisted on an agreement in writing which he drew up and both parties signed. The document is remarkable in its stark and ingenuous simplicity and reads as follows:
This contract covers a stock purchase agreement between A1 Manuel and V. Mitchell Liss.
Mr. A1 Manuel knows of a stock which is expected to make a rise above its present market price. As a part of this agreement, he will supply the name of this stock to Mr. Liss.
Mr. Liss agrees to buy at least 100 shares of the stock within one to two days after the disclosure of the name of the stock. The contract will not apply to the purchase of more than 300 shares of the said stock.
Mr. AI Manuel agrees to re-imburse Mr. Liss if the stock is sold below the purchase price or to cover all of the losses resulting from the transaction. In return for the stock information and the agreement on the losses, Mr. Manuel is to receive 50% of the net profit from the sale of the stock after taxes and commission.
Mr. Manuel will establish the time to sell the stock. Unless a future agreement is reached to extend the time of this contract, the stock must be sold within one year. Thus a settlement of the loss or gain must be made within the year of the date of a purchase of a block of the stock.
*616 Mr. Manuel states he has 200 shares of the same stock with a Market value of approx. $60.00 per share, and he guarantees the losses that might be incurred by this contract with an equivalent amount of this stock or cash.
/s/ Y. Mitchell Liss L. S. /s/ A1 Manuel L. S.
Dated March 23, 1966
Upon the signing of the agreement, defendant disclosed that the name of the stock was Western Equities, Inc., later changed to Westec Corporation, traded on the American Stock Exchange. Plaintiff then placed an order for 100 shares of the stock for which he paid $6,070.03.
The stock, instead of rising sharply, began to plunge. Defendant did not instruct the sale of the stock and plaintiff sat tight. Then, eight months after it was purchased, the Securities and Exchange Commission suspended all trading in the stock, and shortly thereafter a petition in bankruptcy was filed by Westec. Since the suspension, the stock has never been traded, and in the opinion of a qualified expert it has utterly no value today.
Plaintiff now claims that his $6,070.03 investment was a total loss and seeks to recover on defendant’s guarantee of the losses. The only defense raised by the defendant is that enforcement of this contract, which he contends is illegal, would be in contravention of public policy. The burden is on the defendant to demonstrate that a contract which on its face clearly establishes liability is not to be given legal sanction by a court. (Bibb v. Allen, 19 U. S. 481; Springs v. James, 137 App. Div. 110, affd. 202 N. Y. 603.)
It is the contention of the defendant that under former sections 991 to 992 of the Penal Law (now § 225.00) a contract, the performance of which depends upon chance, lot, casualty, or unknown contingent event, constitutes in effect an unlawful wager which a court will not enforce. This contention is too broad.to be tenable. Except for those endowed with the blessings of prescience or omnipotence, the agreements of all men as to the future depend to some degree upon chance and unknown and fortuitous events.
“ The best laid schemes o’ mice and men Gang aft a-gley;
An lea’e us nought but grief and pain,
For promis’d joy.”
One of our most substantial and respected businesses, insurance, is premised upon the most unknowable and unpredictable contingency of all — death. The stock market, as a barometer of business success, international and domestic outlook, sales, taxes, profits, competition, and a hundred variables, not the least of *617 which is the irrationality of mass psychology, is a notoriously volatile indicator whose fluctuations, largely beyond individual control, bestow fortunes on some men while leaving others shattered and penniless. Chancy, yes. A gamble in the legal sense rather than the vernacular, no.
“ Business may involve speculation but unless the latter is illegal it does not get dowtj to what in modern times is the lower classification known as gambling.” (Holberg v. Westchester Racing Assn., 184 Misc. 581, 586.)
Bisk, then, is not the element which makes the transaction a gamble. When a party has a genuine personal stake in the outcome of future events, as when he has an insurable interest (Reed v. Provident Sav. Life Assur. Soc., 190 N. Y. 111), an investment, (Bigelow v. Benedict, 70 N. Y. 202), a contract involving goods, commodities, work, labor or services (Brooks v. People’s Bank, 233 N. Y. 87; Zeigler v. Illinois Trust & Sav. Bank, 245 Ill. 180), it is an approved and judicially enforcible mode or form of business and, regardless of risk, not a bet, wager or illegal gamble.
There are some forms of speculative enterprise which are pure gambles, but which nevertheless, by virtue of legislative fiat, are given public sanction — most notably pari-mutuel betting, bingo (N. Y. Const., art. I, § 9), and the State lottery. (People v. Stein, 280 App. Div. 176, 178.) These exceptions to the rule are hedged about with safeguards — on the theory, I suppose, that a restricted public evil becomes a public good.
Apart from the exceptions noted above, it would appear that the basic distinction between the illegal gambling transaction and the legitimate speculative investment turns on the nature of the stake. If a sum of money is put up merely to abide a contingent event, at which time the event will determine to whom the money shall go, the transaction is clearly a wager. If, on the other hand, the money is used in the speculative enterprise, the reward of success is deemed a return on investment. The difference is that the investor does something, or attempts to do something to influence the favorable outcome of the venture, while the gambler passively awaits (or he should) the happening of the fortuitous event. The absence of a working investment, with money passing only after the event, is one of the indicia of an illegal wager. (Hurd v. Taylor, 181 N. Y. 231; Zeller v. Leiter, 189 N. Y. 361; Weld v. Postal Tel. Cable Co., 199 N. Y. 88.)
It is defendant’s argument, that however legal it may have been for plaintiff to have made a speculative investment, his own part in the transaction was in no sense an investment — that it was one step removed from the stock purchase, and that *618 his coming out ahead or behind would truly be the result of an illegal wager with plaintiff. To this end, defendant has analogized his situation to that presented in Cohen v. Iuzzini (46 Misc 2d 855). There, one of the parties was to make the selections, and the other party was to make the wager for him at a designated pari-mutuel track, and was to receive a stated share of the prospective winnings. The Appellate Term held that while the wager may have been legal, the agreement outside the track to share the proceeds was void and unenforcible. Unfortunately, defendant failed to note that that holding was reversed by the Appellate Division (25 A D 2d 878) which held that the agreement to divide the proceeds of a legal transaction could not be held illegal as a matter of law. The court viewed the transaction either as one where one party acted as agent for the other, or as an express parol trust.
In the instant case one party was to furnish the wherewithal for a perfectly legal purchase of stock; the other party was to furnish specialized or “ inside ” information as to the identity of the stock, and the timing of its sale. So far as profits and losses were concerned, plaintiff would make the initial investment, and he and defendant would each get 50% of the net profits, while defendant was to bear all the losses. (Cf. Jenks v. Billingsley, 39 Ga. App. 243; Young v. Stephenson, 82 Okl. 239.) This is a classic “ joint venture ” in which each party was to furnish money or knowledge for a particular transaction, and was to share the profits and losses in accordance with a specified formula. (Matter of Steinbeck v. Gerosa, 4 N Y 2d 302; Shove v. Siegbert, 239 App. Div. 334; Haxton & Son v. Rich, 267 App. Div. 492.)
I find that the parties entered into an enforcible contract of joint venture, that, no matter however foolish it may have been, it does not contravene public policy, that plaintiff sustained a loss thereunder of $6,070.03, that he is entitled to be indemnified therefor by defendant, and that he accordingly is awarded judgment in the sum of $6,070.03, together with interest from the 29th day of August, 1966.